**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **MARLON MANNING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.** 3:26-cv-740-DJH |
| | ) | |
| **CHURCHILL DOWNS INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. NATURE OF THE CASE

1. This is an action brought by Plaintiff, Marlon Manning ("Manning"), by counsel, against Defendant, Churchill Downs Inc. ("Defendant") alleging violations of the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et. seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C § 1981 ("Section 1981"), and the Kentucky Civil Rights Act ("KCRA").

## II. PARTIES

2. Manning is a resident of Jefferson County, Kentucky, who at all times relevant to this action resided within the geographical boundaries of the Western District of Kentucky.

3. Defendant maintains offices and routinely conducts business in Jefferson County, Kentucky, which is located within the geographical boundaries of the Western District of Kentucky.

## III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 2000e-5(f)(3).

5. This Court has supplemental jurisdiction over Plaintiff's state law claims under KCRA pursuant to 28 U.S.C. § 1367(a) because his state law claim arises from the same common nucleus of operative facts as his federal law claim and all of his claims form a single case and controversy under Article III of the United States Constitution.

6. Defendant is an "employer" as that term is defined by 42 U.S.C. § 2000e(b).

7. Manning was an "employee" as that term is defined by 42 U.S.C. § 2000e(f).

8. Manning satisfied his obligation to exhaust his administrative remedies having timely filed a Charge of Discrimination (Charge No. 474-2026-01749) with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on his race. Manning received his Notice of Suit Rights and timely files this action.

9. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Western District of Kentucky; thus, venue is proper in this court.

## IV. FACTUAL ALLEGATIONS

10. Manning, who is African American, began working for Defendant on or about September 16, 2025, as a Security Guard.

11. At all relevant times, Manning met or exceeded Defendant's legitimate performance expectations.

12. Upon hire, Manning attended a one-day security training introduction class facilitated by the head of Defendant's security department.

13. During training, Manning learned that security guards are not informed of their assigned workstation until shortly before that shift begins, when shift supervisors distribute station assignments after confirming which guards have reported to work.

14. Manning trained on entrance security podiums, which are equipped with video monitoring, metal detection, and a computer-based identification verification system known as "Veridocs," used to check guest's state issued identification or passports.

15. Manning was informed during training that Defendant's identification check procedures differ between daytime and nighttime shifts. During the day, security guards can admit guests who appear to be 21 years of age or older without checking identification, whereas after 11:00 p.m., security guards are required to check identification for every guest.

16. Manning's training did not include instruction on watch list guests, and he received no nighttime training relating to the overnight shift to which he was assigned.

17. Defendant uses surveillance referred to as "Sky," that monitors all video and audio recordings inside and outside the facility, including the conduct of both guests and security guards at entrance podiums, and for directing supervisors by radio to intervene immediately upon observing a policy violation by a guest or security guard.

18. On or about the night of November 3, 2025, continuing into the early morning of November 4, 2025, Manning was assigned to work at the main entrance security podium.

19. During that shift, a male (Caucasian) guest wearing a red sweater and a gold chain entered the facility alone, told Manning he was waiting for a friend (Caucasian) and for his little brother (Caucasian) and the brother's girlfriend (Caucasian), which was recorded on Defendant's video and audio recording system.

20. When a second guest entered, identified by the first as his friend, Manning requested identification from the friend pursuant to Defendant's identification policy.

21. The friend showed Manning two out of state driver's licenses. Manning processed one through the Veridocs system, which validated. When Manning attempted to return the license

to the friend, the friend instructed him to give both licenses to the man in the red sweater. Manning then processed the second license through Veridocs, which also validated it. Manning subsequently handed both licenses to the man in the red sweater before admitting the guests.

22. Sometime before 2:00 a.m., a slot attendant (Caucasian) brought a red sweater that was found unattended on the gaming floor to Manning. Consistent with Defendant's policy that security guards are not required to hold found clothing, the sweater was placed on a rack near Manning's station.

23. The little brother and his girlfriend later approached Manning at the podium and asked whether a red sweater had been found. Manning recognized them as part of the earlier group of guests, and he allowed them to take the sweater as they exited the facility.

24. Approximately ten minutes later, the original guest who had worn the red sweater returned and asked about it. Manning told him it had been given to his brother and the brother's girlfriend. The guest left the facility to look for them, then returned, and at no point reported to Manning that his gold chain, valued at approximately $20,000, was lost or had been stolen.

25. Manning then went to lunch and was reassigned to a different post for the remainder of his shift, with no further interaction with the guests described above. Manning observed that the guest who had worn the red sweater remained in the facility for approximately seven hours and appeared to have been drinking throughout the night.

26. At approximately 7:00 a.m. on November 4, 2025, after Manning's shift had ended and he had been relieved by another guard (African American), supervisor Keller (last name unknown) (Caucasian) stopped Manning as he was leaving and without explanation, directed him to remain at the facility.

27. Supervisor Shannon (last name unknown) (Caucasian) informed Manning that the guest who had worn the red sweater and gold chain had reported to another security officer at 6:55 a.m. that his gold chain was lost or stolen.

28. Manning explained to Shannon what he had observed regarding the sweater, including that it had been recovered by a slot attendant and later retrieved by the guest's brother and the brother's girlfriend. Shannon responded in a hostile manner, stating that Manning should not have allowed the sweater to be taken.

29. Keller and Shannon required Manning to wait outside a room for ten minutes while they reviewed the matter. Neither supervisor obtained the name of the guest who made the report, contacted Defendant’s on-site police officer, or initiated a police report.

30. Manning was then brought into the security office and Keller questioned him and claimed that the guests had used a single driver's license to enter the facility. Keller asked Manning whether he knew the guests involved and he stated that he did not.

31. Defendant’s Sky surveillance unit did not intervene at any point during Manning's encounter with the guests despite the encounter being fully recorded on video and audio.

32. Manning emailed Claudia Rios (“Rios”) (Hispanic), Defendant’s Human Resources employee, requesting assistance in clarifying the incident involving Keller and Shannon and stating his intent to file a harassment claim against them.

33. After Manning sent that email, he received a phone call from Keller informing him that he was being placed on unpaid administrative leave pending investigation, effective immediately, without further explanation of what policy he allegedly violated.

34. On or about November 5, 2025, Manning filed a harassment claim against Keller and Shannon with Defendant’s Human Resources.

35. On or about November 6, 2025, Defendant terminated Manning's employment.

36. Manning received a letter from Defendant dated November 6, 2025, stating that his termination was based on him allegedly failing to request identification from a guest and sharing internal control information with a guest.

37. Upon information and belief, Shannon was involved in an incident involving Defendant's identification policy. During that incident, Shannon allegedly permitted a Caucasian female guest to enter the facility after the guest presented a state issued identification belonging to an African American woman. The identification was later discovered when the guest attempted to use it at the main cage. Unlike Manning, Shannon was not placed on administrative leave, disciplined, or terminated. Instead, Shannon remained employed by Defendant and was subsequently promoted to a supervisory position.

38. Upon information and belief, the slot attendant who recovered the red sweater from the gaming floor and brought it to Manning's security desk was not questioned, placed on administrative leave, disciplined, or terminated in connection with the incident involving the missing gold chain. The slot attendant's interaction with the red sweater was recorded on Defendant's video and audio recording system.

## V. CAUSES OF ACTION

### COUNT I: TITLE VII and KCRA – RACE DISCRIMINATION

39. Manning hereby incorporates paragraphs one (1) through thirty-eight (38) of his Complaint as if the same were set forth at length herein.

40. Manning is African American.

41. Defendant terminated Manning's employment because of his race.

42. Defendant's actions were willful, intentional, and done with reckless disregard for Manning's rights as protected by Title VII, Section 1981, and the KCRA.

43. Manning has suffered damages as a result of Defendant's unlawful actions.

**COUNT II: TITLE VII and KCRA – RETALIATION**

44. Manning hereby incorporates paragraphs one (1) through forty-three (43) of his Complaint as if the same were set forth at length herein.

45. Manning engaged in protected activity when he filed a race-based harassment claim against Keller and Shannon with Defendant's Human Resources.

46. Defendant retaliated against Manning for engaging in protected activity by terminating his employment.

47. Defendant's actions were willful, intentional, and done with reckless disregard for Manning's rights as protected by Title VII, Section 1981, and the KCRA.

48. Manning has suffered damages as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

**WHEREFORE**, Plaintiff, Marlon Manning, respectfully requests that this Court enter judgment in his favor and award him the following relief:

1. Reinstate Plaintiff to the position, salary, and seniority level he would have enjoyed but for Defendant's unlawful employment actions, or award him front pay in lieu thereof;

2. Award Plaintiff all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Award Plaintiff compensatory damages for violations of Title VII, Section 1981 and the KCRA;

5. Award Plaintiff punitive damages for Defendants' violations of Title VII and Section 1981;

6. Award Plaintiff all costs and attorney's fees incurred as a result of bringing this action;

7. Award Plaintiff pre- and post-judgment interest on all sums recoverable;

8. Award Plaintiff all other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

By: */s/ Andrew Dutkanych III*
Andrew Dutkanych, Atty No. 23551-49
BIESECKER DUTKANYCH & MACER, LLC
144 N. Delaware Street
Indianapolis, Indiana 46204
Office: (317) 991-4765
Facsimile: (812) 424-1005
E-Mail: ad@bdlegal.com

*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff, Marlon Manning, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

By: */s/ Andrew Dutkanych III*
Andrew Dutkanych, Atty No. 23551-49
BIESECKER DUTKANYCH & MACER, LLC
144 N. Delaware Street
Indianapolis, Indiana 46204
Office: (317) 991-4765
Facsimile: (812) 424-1005
E-Mail: ad@bdlegal.com

*Attorney for Plaintiff*